JOHN H. PETTIT, APPELLEE, V. MICHAEL LOUIS, APPELLANT.

FILED FEBRUARY 15, 1911. No. 16,296.

1. **Evidence:** RECITALS IN RELEASE OF MORTGAGE. The recital in a release of a mortgage that it was executed in consideration of the payment of the debt named therein, while *prima facie* evidence of the fact stated, is not conclusive thereof, and such recital may be overcome by evidence which clearly shows that said debt had not in fact been paid.

2. **Limitation of Actions:** SUIT BY MORTGAGOR TO QUIET TITLE. In the hands of a mortgagee in possession, a mortgage never becomes barred by lapse of time in the sense that the mortgagor can, in a court of equity, quiet his title against the mortgage without first doing equity by paying it.

3. **Mortgages:** RIGHTS OF MORTGAGEE IN POSSESSION. Section 55, ch. 73, Comp. St. 1909, does not prevent parties to a mortgage from stipulating therein for the investiture of the mortgagee with the right of possession and right to the rents and profits of the mortgaged premises in the event of default on the part of the mortgagor; and in case the mortgage contains such an express stipulation, and the mortgagee peaceably obtains possession of said mortgaged premises, he may, after default on the part of the mortgagor, hold such possession as against the mortgagor or his grantees until said mortgage is fully paid.

4. ———: ———. Where one who has purchased lands at a tax foreclosure sale and gone into peaceable possession of the same under a sheriff's deed issued in such foreclosure proceeding subsequently purchases an outstanding mortgage, not then barred by the statute of limitations, and it subsequently transpires that the foreclosure proceeding under which he obtained possession of the mortgaged premises is void, he may nevertheless, if the mortgagor is in default, defend his possession of said premises as a mortgagee in possession.

APPEAL from the district court for Hayes county: LESLIE G. HURD, JUDGE. *Reversed with directions.*

*B. F. Hastings,* for appellant.

*E. E. Spencer* and *Charles S. Roe, contra.*

FAWCETT, J.

From a decree of the district court for Hayes county, quieting plaintiff's title to the northwest quarter of section 19, township 8, range 34, in said county, defendant Louis appeals.

On November 1, 1888, one Joseph Camp, then being the owner of the land in controversy, executed to one Darrow a promissory note for $500, due November 1, 1893, and his mortgage deed securing the same. The mortgage was duly recorded November 10, 1888. February 19, 1889, Darrow assigned the mortgage to Lucretia Jerome. July 11, 1892, Camp conveyed to Joseph Z. Briscoe, and on October 4, 1895, Briscoe, his wife joining, conveyed the land to plaintiff, John H. Pettit. This deed was not recorded by Pettit until March 28, 1908, nor, so far as the record shows, was any claim of ownership or right of possession made by Pettit until this suit was commenced and summons served on September 24, 1908. On August 9, 1900, defendant Louis instituted proceedings in the district court for Hayes county to foreclose a tax lien upon the lands, making Briscoe and his wife defendants. Service was attempted to be had upon the Briscoes by publication upon an affidavit of nonresidence. The suit proceeded to decree and sale, and a sheriff's deed was issued to Louis October 15, 1901. The deed was immediately recorded and Louis at once took possession of the premises. At the time the action to foreclose the tax lien was commenced and service attempted by publication, Briscoe and his wife were, and had for a number of years been, actual residents of Lancaster county, Nebraska, and defendant now concedes that the court in that suit did not have jurisdiction of the persons of the Briscoes and that his deed was therefore void. Defendant Louis paid all taxes assessed against the premises for the years 1897 to 1907, inclusive. On May 23, 1901, defendant Louis purchased the Camp note and mortgage from Lucretia Jerome and received from her an

35

assignment of the same, which was duly filed on June 13, 1901. On March 9, 1905, defendant Louis executed and filed for record a release of the mortgage referred to, the release reciting that it was executed "in consideration of the payment of the debt named therein." Defendant Louis at all times, after entering into possession of the land under the sheriff's deed in the tax foreclosure suit, up to the time of the commencement of this suit, had been in the actual, peaceable and unchallenged possession of the lands. Plaintiff commenced this suit September 24, 1908, to set aside the sheriff's deed obtained by defendant Louis, and to redeem from his tax lien, and also to quiet his title against the mortgage above referred to; the prayer as to the mortgage reading as follows: "That the aforesaid mortgage appearing of record against said premises from Joseph Camp and Frances Camp to the defendant, Lew E. Darrow, be decreed not to be enforceable as a lien against said premises by reason of the lapse of time, and the same be canceled and discharged of record, and the cloud upon plaintiff's title by reason thereof be removed; * * * that the title of this plaintiff in and to said premises be quieted as against said defendants, and all of them; that this plaintiff be put into possession of said premises; and for such other and further relief as justice and equity may require."

Defendant assigns eight principal reasons why the judgment of the district court should be reversed. Having reached the conclusion that the seventh assignment must be sustained, and as that conclusion is decisive of the case, it will not be necessary to consider any of the other assignments. The seventh assignment is: "Defendant Louis being the mortgagee in possession, plaintiff could only redeem by paying the amount due on the mortgage." Plaintiff in his brief concedes that there is "but the one question to be determined by this court, the rights of the parties herein with respect to the mortgage involved in this controversy." As we understand plaintiff's argument, it is that defendant was not a mortgagee in possession for

the reasons: First, that the release shows that the mortgage had been paid; second, that it was barred by the statute of limitations; third, that there was no stipulation in the mortgage giving the mortgagee the right to the possession of the premises until after foreclosure of the same; and, fourth, that plaintiff never in any lawful way obtained the possession or right to the possession of the property. We will consider these points in the order named.

1. The release, it is true, recites that it was executed "in consideration of the payment of the debt named therein." Is this recital in the release conclusive? We think not. It clearly appears that Mr. Louis thought that, as against the owner of the fee, he had obtained a good title under his sheriff's deed, but, in order to avoid any controversy with the mortgagee, he sought out the holder of the mortgage and purchased and obtained an assignment of the same. He made this purchase May 23, 1901. Nearly four years thereafter, or on March 9, 1905, no one in the meantime having questioned his title and right of possession, he executed and filed the release. Plaintiff argues that there is no evidence in the record to show that the mortgage had not in fact been paid. In this plaintiff is in error, as we think he furnished proof of the nonpayment himself. The deposition of plaintiff was taken and introduced in his own behalf. After testifying that he had purchased the land in controversy, we have the following: "Q. About what date was that purchase made? A. On the 4th day of October, 1895. Q. When you purchased that land, was there any incumbrance on it? A. Yes, sir; there was a mortgage on it of $500 given by Joseph Camp to Lew E. Darrow. Q. And the above described property was deeded to you subject to that mortgage, was it? A. Yes, sir. Q. Mr. Pettit, since you obtained title to said land, have you ever paid any principal or interest on that mortgage? A. No, sir." If plaintiff had purchased the land subject to this particular mortgage, over nine years prior to the date defendant released the same, he assuredly would be the one who had paid it if it had in fact

been paid. It is not to be presumed that any one else would have paid it for him; and, having testified that he had not paid any part of the principal or interest on it, we think it is quite clearly established that the mortgage had not been paid, and that the release was executed by Mr. Louis, simply for the purpose of clearing his supposed title upon the record.

2. That the mortgage would have been barred at the time this suit was instituted, had a third party been attempting to foreclose the same, or had Mr. Louis been attempting to foreclose it without being in possession of the property, will be conceded; but in the hands of a mortgagee in possession, a mortgage never becomes barred, in the sense that the mortgagor or his grantee can ask a court of equity to quiet his title against the mortgage without himself doing equity by paying it.

3. There is this stipulation in the mortgage: "The said first parties agree to pay all taxes and assessments levied upon said premises, when the same are due (this condition the record shows had been broken), and insurance premiums for amount of insurance hereinafter specified, and, if not so paid, the holder of this mortgage may, without notice, declare the whole sum of money herein secured due and payable at once, or may elect to pay such taxes, assessments and insurance premiums, and be entitled to interest on the same at the rate of 10 per cent. per annum until paid, and this mortgage shall stand as security for the amount, so paid, with such interest. But whether the holder of this mortgage elect to pay such taxes, assessments or insurance premiums or not, it is distinctly understood that the holder hereof may immediately cause this mortgage to be foreclosed, and shall be entitled to immediate possession of the premises, and rents, issues and profits thereof." We do not think that the words, "the holder hereof may immediately cause this mortgage to be foreclosed," should be construed to mean that he *must* cause the mortgage to be foreclosed before the next clause should be operative, viz., "and shall be entitled to im-

mediate possession of the premises, and rents, issues and profits thereof." The stipulation in this mortgage appears to be substantially the same as the one in the mortgage under consideration in *Felino v. Newcomb Lumber Co.*, 64 Neb. 335. We there held: "A provision in a real estate mortgage that, in case of a default in the payment of the debt thereby secured, the mortgagee shall be entitled to the immediate possession of the premises, is valid as to the parties and subsequent purchasers and incumbrancers chargeable with notice." We there considered section 55, ch. 73, Comp. St. 1909, which provides: "In the absence of stipulations to the contrary, the mortgagor of real estate retains the legal title and right of possession thereof," and held: "This provision leaves it competent for the parties to a mortgage to stipulate for the investiture of the mortgagee with the legal title and right of possession, which carries with it the right to the rents and profits. As we have seen, in this case the mortgage expressly provided that upon the forfeiture of the mortgage, or in case of default in any of the payments, the mortgagee should be entitled to the immediate possession of the premises. Of this provision subsequent purchasers and incumbrancers, including the plaintiff in this case, were as fully charged with notice as with any other provision of the mortgage. * * * In *McIntyre v. Whitfield*, 13 Smedes & M. (Miss.) 88, it was held that a stipulation similar to the one contained in defendant's mortgage might be enforced by the mortgagees taking possession and holding it." In *Hobson v. Huxtable*, 79 Neb. 340, we held: "In case a defendant as a matter of equity is entitled to be subrogated to the lien of a mortgage upon real estate, it is within the power of a court of equity, as a condition precedent to granting equitable relief to the owner of the real estate, to compel the payment of that mortgage, even though by its terms said lien be barred by the statute of limitations." In *Bank of Alma v. Hamilton*, 85 Neb. 441, we held: "If a litigant asks affirmative equitable relief, he will be required to do justice himself

with regard to any equity arising out of the subject matter of the action in favor of his adversary, and the statute of limitations is no bar to the imposition of such conditions."

4. We are unable to concur in plaintiff's contention that defendant never in any lawful way obtained the possession or right to the possession of the property. He obtained possession of the property under a deed ordered by the district court, in a proceeding which he thought was in all respects regular. He obtained his possession peaceably, without resorting to any force and without objection from the plaintiff or any one else. He retained that possession for over four years before he purchased the mortgage. Having become the owner of the mortgage while he was in peaceable possession of the property, and the mortgage containing a stipulation authorizing him to take possession in the event of a default by the mortgagor, we think he was entitled to claim that he was in possession as mortgagee, regardless of the question as to his right of possession under his sheriff's deed. In 1 Jones, Mortgages (3d ed.) sec. 715, it is said: "A mortgagee who has acquired possession before his mortgage became due, by virtue of some other title, is to be deemed at the maturity of his mortgage as holding as a mortgagee in possession upon a forfeiture; and therefore, although he has lost the title under which he originally entered, he may defend his possession under his mortgage." A court of equity will not draw fine distinctions or indulge in mere technicalities to favor the commission of a wrong. That to permit plaintiff to oust defendant of his possession of the property in controversy without payment of the mortgage, subject to which plaintiff took his title, would be a wrong, seems to be too clear to admit of a doubt. Plaintiff obtained his deed October 4, 1905, subject to this mortgage. He kept his deed off the records for 12 years. He never paid any taxes, or any portion of the principal, or any installment of interest upon the mortgage. He retained his secret ownership of the property in controversy during

all of the time that defendant was foreclosing his tax lien, obtaining his sheriff's deed, purchasing the mortgage. and releasing the same, and for more than three years thereafter. Having failed in the performance of every duty required of him, he now, after the land has doubtlesss greatly increased in value, emerges from his hiding, offers to redeem from the tax lien, and boldly asks to have his title quieted against the mortgage, subject to which he took his title, without paying any portion of the same. A court of equity will not grant such an unjust request.

The judgment of the district court is reversed and the cause remanded, with directions to enter a decree permitting plaintiff to redeem from the tax sale by the repayment to defendant of all taxes paid by him, with lawful interest, and for permanent improvements made by defendant, if any; and upon further payment to defendant of the mortgage in controversy, with interest thereon at the rate of 10 per cent. per annum from November 1, 1893, less the reasonable rental value of the lands in controversy during the time defendant has been in possession of the same.

REVERSED.