W. B. ZENTMIRE, APPELLANT, V. EDWIN F. BRAILEY, SHERIFF, ET AL., APPELLEES.

FILED APRIL 24, 1911. No. 16,391.

1. **Attorney's Lien:** ATTACHED PROPERTY. An attorney's lien in due form, when filed in a pending action, binds realty previously attached therein to satisfy the client's claim.

2. ———: ———: FRAUDULENT DISMISSAL OF ACTION. A plaintiff, by dismissing his action in fraud of his attorney's rights, cannot thereby prevent the enforcement of the attorney's lien on property attached to satisfy plaintiff's claim.

3. ———: ———: ———: SERVICE OF NOTICE TO VACATE DISMISSAL. A nonresident defendant whose realty has been legally attached to satisfy plaintiff's claim is chargeable with notice of the lien of plaintiff's attorney, when duly filed in the case, and notice to vacate a dismissal procured in fraud of the attorney's rights may be served on counsel who appeared for defendant.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Lambert & Winters,* for appellant.

*Gurley & Woodrough* and *D. O. Dwyer, contra.*

ROSE, J.

The relief sought by plaintiff is an injunction to prevent the enforcement of an attorney's lien on real estate attached in a former action. D. O. Dwyer, an attorney at law, was employed by Frank Stanley to collect from John B. Dodson $1,760 as stipulated commission for the sale of land. Under his employment Dwyer, to collect the sum stated, began an action in favor of his client and against Dodson in the district court for Douglas county, August 12, 1908, and immediately attached a lot in South Omaha as the property of the debtor. An attorney's lien for $500 was filed in the case by Dwyer October 12, 1908. After a conference between Stanley and Dodson, the former dis-

missed his action and discharged the attachment October 27, 1908, without paying Dwyer for his services and without his knowledge or consent. This occurred when Dwyer was taking depositions at Tecumseh on behalf of his client. The court entered an order of dismissal, but did not at the time know of the existence of the attorney's lien. The same day a deed conveying the attached lot to W. P. Zentmire, Dodson's father-in-law, was filed in the office of the register of deeds. A few days later, during the term at which the case was dismissed, Dwyer intervened, procured an order vacating the dismissal and reinstating the attachment to the extent of his lien, and obtained a decree for the full amount of his fees and for the foreclosure of his lien against the attached property. Though notice of the proceedings on Dwyer's behalf was in due time served on the attorneys who had entered their appearance for Dodson, he neither appeared in person nor by counsel after the action had been dismissed. To prevent the sale of the attached property to satisfy the attorney's lien, Zentmire brought this suit in equity against Dwyer and the sheriff of Douglas county. The injunction was denied, and plaintiff appealed.

In arguing the errors assigned, plaintiff asserts: The dismissal of the action terminated the litigation between the parties thereto. There was no fraud in the proceedings. Neither party could ask for a reinstatement of the case or appeal from the judgment of dismissal. The services of Lambert & Winters as attorneys for Dodson ended when the case was dismissed. Subsequent service on them was not notice to their client, and gave the court no jurisdiction to vacate the dismissal or to reinstate the attachment. Dodson did not appear in the action at law after the case was dismissed. The attorney's lien did not bind the attached property. Zentmire was an innocent purchaser, having bought the realty after the attachment was dissolved and before it was reinstated. His rights under his purchase were not affected by the subsequent reinstatement. Plaintiff concludes, therefore, that the trial

court was without jurisdiction to vacate the dismissal or to reinstate the attachment or to subject the attached property to the payment of the attorney's lien. For the reasons urged, it is insisted by plaintiff that he should be protected by injunction from the void decree. In a number of material respects these views of the law cannot be adopted.

1. Did the attorney's lien, when filed, bind the attached property? A text-writer says: "When an attachment has been made, the lien of the attachment inures to the benefit of the attorney for his fees and costs, and this cannot be defeated by any settlement made by the client with the debtor, without his consent." 1 Jones, Liens (2d ed.) sec. 232. In asserting his lien, Dwyer invoked a right granted by statute in the following language: "An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party." Comp. St. 1909, ch. 7, sec 8. This provision is declaratory of the common law, and gives an attorney a charging or specific lien upon money in the hands of the adverse party to an action. *Cones v. Brooks,* 60 Neb. 698. The lien may attach to a judgment in favor of a client who is an executor, though the services were rendered on behalf of testator's estate. *Burleigh v. Palmer,* 74 Neb. 122. A judgment in favor of prosecutrix in a bastardy proceeding may be subjected to the lien of her attorney for professional services therein. *Taylor v. Stull,* 79 Neb. 295. The reasons for subjecting such judgments to attorneys' liens apply to attachments. Dwyer, by skill and industry in asserting the rights of his client, placed the attached property in the custody of the law to satisfy a debt of the owner. While the attachment was not a judgment, it was nevertheless a lien obtained through a process of the court. If it was effective for the purpose of collect-

ing the client's claim when the cause was dismissed, it served the purpose of a judgment. On this point the ruling is that the attached realty was charged with the attorney's lien as soon as it was filed. *Gist, Ex'r, v. Hanly,* 33 Ark. 233; *Pleasants, Adm'r, v. Kortrecht,* 5 Heisk. (Tenn.) 694; *Hunt v. McClanahan,* 1 Heisk. (Tenn.) 503.

2. Did the dismissal deprive the attorney of his right to enforce his lien on the attached property? The lien created in favor of the attorney a right independent of the wish or control of any of the suitors. The law is that the statutory lien of an attorney is paramount to any rights of the parties to the action. *Rice & Gorum v. Day,* 33 Neb. 204. It cannot be defeated by the stipulation of the litigants or by a dismissal without the attorney's consent. *Aspinwall v. Sabin,* 22 Neb. 73. Stanley, therefore, by dismissing the action when his attorney was absent and by failing to call to the attention of the court the existence of the lien of the attorney, did not deprive him of his right to the benefits thereof.

3. Did the court have jurisdiction to vacate the dismissal and to reinstate the attachment to the extent of the attorney's lien? In granting such relief the court, during the term at which the attachment was discharged, acted promptly on proper pleadings filed by the lienor. Jurisdiction, therefore, was not lost by delay. For the purpose of this inquiry, it is immaterial whether the client's conduct was prompted by a purpose to assert a legal right or to cheat his attorney out of compensation for services. In either view, he interfered with an independent, statutory right of his attorney and wrongfully discharged property from a lien over which he had no control. He also procured an order discharging the attachment without informing the court of the existence of the lien. Otherwise, the rights of the attorney would have been protected by the court. Courts properly intervene to protect attorneys from fraudulent settlements or dismissals which would prevent the collection of just compensation for professional services. *Potter v. Ajax Mining Co.,* 19 Utah,

14

421. When Dodson procured a dismissal during the existence of the attorney's lien, he acted at his peril. He was bound to know that Stanley had no authority to release the attached property from the attorney's lien. In requiring attorneys to answer to their clients, the courts fix a high standard of professional accountability, and, in dealing with the conduct of clients toward their attorneys, fraud and imposition should not be tolerated. The supreme court of Tennessee wisely observed: "While it is the duty of the courts to protect clients against all unfair advantages on the part of their counsel, it is a duty of equal obligation to shield the attorney, so far as practicable, against the bad faith and ingratitude of clients." *Hunt v. McClanahan,* 1 Heisk. (Tenn.) 503. In the present case the conduct of the client was, in contemplation of law, a fraud upon his attorney. *Pleasants, Adm'r, v. Kortrecht,* 5 Heisk. (Tenn.) 694. The court had not lost control over its own order of dismissal when the attachment was reinstated. Under the circumstances of this case, the notice to the counsel who appeared for Dodson was sufficient. *Merriam v. Gordon,* 17 Neb. 325.

4. Was plaintiff an innocent purchaser of the attached property, having purchased it, as he asserts, after the action was dismissed and before the court reinstated the attachment? The legal effect of the attachment was to bring Dodson into court and to charge the property with a lien in favor of Stanley for the satisfaction of his claim. The attorney's lien was filed in the case and bound the property itself. "This claim," said Judge Maxwell, "may be filed with the papers in the case, and the adverse party will be chargeable with notice of its existence." *Elliott v. Atkins,* 26 Neb. 403. When plaintiff made the purchase on which he relies, there was in the files of the case an unsatisfied attorney's lien which Stanley had no authority to release. The very day of the dismissal, and during the term at which it was rendered and while the court had control over its judgment for the purpose of changing or correcting it, plaintiff bought the attached

property from his son-in-law, Dodson. An examination of the entire record, when all the circumstances connected with the transfer are considered, leads to the conclusion that the trial court properly found that plaintiff was not an innocent purchaser.

There is no error in the order denying the injunction, and the judgment is

AFFIRMED.